By the Court.
Hoffman, J.
— This is an appeal from a judgment in favor of the plaintiff against the defendants, for the sum of $2,564.13, entered upon the verdict of a jury for $2,000, with costs and disbursements.
The case was formerly tried upon the same pleadings, and the learned Judge then instructed the jury unqualifiedly, that the plaintiff was entitled to recover, and they had only to assess the damages. The verdict being taken subject to the opinion of the Court, the case was brought before the General Term, where a new trial was ordered.
The points which were then declared to be established as facts, or settled as law, were the following:
The plaintiff’s premises were situated on a market-place having a passage along the front of the premises with a sidewalk. It was not proved, whether this passage had ever been laid out as street or highway. There was evidence however of its having been used as a street.
It was shown, that the obstruction complained of, as causing the damage to the plaintiff, arose from occupying the passage and sidewalk with stalls and sheds while the market was rebuilding. It was the duty of the defendants to rebuild, and the inference was, it was done by their authority.
The defendants had all needful authority for this purpose, and the owners of houses and lots upon a market-place, held their premises in subordination to the right and duty of the defendants, to do whatever was necessary for the maintenance of the market; and must submit to whatever inconveniences necessarily resulted from the exercise of that authority. If the rebuilding of the market required a temporary obstruction of the street or passage in the market-place; in front of the plaintiff’s premises, for a reasonable time, while the work was in progress, the public and the adjoining owners were bound to submit to the inconvenience, for the sake of the greater and paramount welfare of the public, for whose use the public markets were authorized by law to be built and maintained. The question to be determined was, not merely, whether the passage in front of the plaintiff’s house was obstructed, but also whether access to his premises was *495 obstructed unnecessarily and unreasonably, or for an unreasonable time; and also (if the right of the defendants to cause the obstruction was conceded or appeared from the evidence then) whether the temporary erections were needlessly offensive or noxious, and whether the defendants caused the nuisance in this latter sense; or neglected any duty which they owed to the plaintiff by not abating it, if it proceeded from the acts or neglects of the tenants of the stalls or sheds.
The Judge on the present trial instructed the jury that the plaintiff was entitled to a verdict, and it was only for them to assess the damages.
The first and material question is, whether the evidence has so varied the case as formerly presented, as to show, that the open space upon which the plaintiff’s shop fronted, was in fact a public street of the city ?
The learned Judge did not submit this as a question of fact to the jury. Was this on the ground that it was fully proven, or that it was immaterial ? I presume that it was for the former reason; and I agree that the fact is made out by the testimony.
The deed of the 9th of September, 1772, from the defendants’ predecessors, conveyed, it is time, only from high water to low water-mark, that is, from Cherry to Water street. But it defines the western boundary upon a slip called Catharine slip, and the grantees “ are to erect a firm wharf or street of 24 feet width, on the west side of the water lot thereby granted, of the whole length thereof, contiguous and adjoining to a certain street there lately laid out, and called Catharine slip.”
We have therefore the street down to Water street, declared to have been laid out by the corporation itself.
There is an assessment list in evidence for paving Catharine street from Cherry to South street, dated in 1828. It came from the street commissioner’s office, and is signed by the clerk of the common council, and sufficiently proven by Mr. Valentine, the clerk. The resolution of the board of councilmen, of July 6th, 1854, is another piece of evidence to show that the defendants recognized the space as being a public street.
The parol evidence shows that it was filled up out to South street in 1820, and that it was always used as a public highway on both sides, until the sheds were built.
*496 This street was thus opened by a continuation oí Catharine slip or street from Water to South street. It had been a public street from Cherry to Water, and for the whole of both sections, the street was laid out over vacant land under water, belonging to the corporation. ■
Ho proceedings under any statute were then necessary. The corporation dedicated it. Governor Dongan’s charter (§ 2,) authorized this. On the assumption of this fact being established, the next inquiry is, as to the law which will apply.,
. The seventeenth section of Montgomerie’s charter provided that the mayor, aldermen, &c., might have, hold, and keep such and so many other markets at such and so many other times and places, in the said city of Hew York, as shall from time to time be ordered, established, erected, and appointed by the common council for the time being.
And by an act of 1822 (Session Laws, ch. 101), the mayor, &c., “ might cause public markets to be erected and kept over the waters of the East and Horth rivers, adjoining to any of their docks and wharfs in the city of Hew York; provided they did not interfere with the flow of the waters, nor be built over the same so as to occupy a distance exceeding one hundred feet from the lines of the city, as established by law on the said rivers.”
The proposition appears to me very clear, that the power to build or to repair markets is entirely subservient to the rights conferred upon the public, by the dedication and opening of a public street by the corporation, over its own land. It follows that the occupation of such a street, and obstructing the use and enjoyment of the same for the reparation of a market adjoining to it, is, in strictness, unlawful, and a breach of the implied contract between the public and the city. It is of special consequence to the owners of houses built upon the street. An injury is, of course, more likely to arise to them than to others.
I do not deny that the corporation may temporarily obstruct a portion of a street by piling materials, or making preparations essential to repair a public market. They grant permits for a similar purpose, to individuals in relation to building or repairing private edifices. "But such a right -is widely different from the power of erecting and keeping, market sheds on a public *497 highway, during an indefinite period and to, the manifest detriment of the owners of adjacent property.
I think it clear that the defendants are responsible, and not any subordinate agents. Their officer, the clerk of the market, collected rents from the occupants of the sheds, and paid them to the comptroller. One branch of the common council had actual notice of the obstructions, on the 6th of July, 1854. It is not a case where the liability of a principal is transferred to an agent.
The judgment must be affirmed, with costs.
Judgment affirmed.